UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
UNITED STATES OF AMERICA,

        Plaintiff,

- against -

115-98 PARK LANE SOUTH, et al.,

       Defendants-In-Rem.

---------------------------------------------------------- X

**MEMORANDUM**
**DECISION AND ORDER**

10 Civ. 3748 (BMC)

**COGAN**, District Judge.

  The Civil Asset Forfeiture Reform Act, 28 U.S.C. § 2465 ("CAFRA"), provides that "in any civil proceeding to forfeit property under any provision of Federal law in which the claimant substantially prevails, the United States shall be liable for reasonable attorney fees and other litigation costs reasonably incurred by the claimant." Id. § 2465(b)(1)(A). The Government brought this civil forfeiture proceeding against several real properties that it deemed to be proceeds of a criminal bank fraud. Capital Stack Fund LLC ("Capital Stack"), the claimant in this forfeiture proceeding, held a then-unrecorded mortgage interest in two of the properties. The instant forfeiture proceeding was resolved when the parties entered into a Settlement Agreement, Stipulation and Final Order of Forfeiture (the "Settlement Agreement"), which I endorsed on December 22, 2011.

  But because the parties could not agree on whether Capital Stack was entitled to an award of attorney fees and costs under CAFRA, the Settlement Agreement explicitly allowed Capital Stack to apply for attorney fees and costs. Capital Stack has moved for an award totaling $454,726.72. For the reasons set forth below, I find that Capital Stack is not entitled to attorney

fees and costs and, therefore, I do not consider the reasonableness of the proposed award.

## BACKGROUND

This case arises out of a related criminal prosecution, United States v. Irina Khaimov, et al., No. 08-CR-0074 (BMC) (E.D.N.Y.). Irina Khaimov ("Irina") formed and controlled two shell corporate entities as part of a scheme to commit mortgage fraud and bank fraud. In 2006, she used these entities and the proceeds of her fraud to purchase real properties located at 9 Oakley Street, Massapequa, New York and 245 McKinley Avenue, Island Park, New York (the "Subject Properties"). In July 2008, after federal law enforcement officers told Irina that she was under investigation, Irina deeded the Subject Properties to her mother, Basanda Khaimov ("Basanda"), through the shell entities.

The next month, a loan broker approached Capital Stack's managing member on behalf of Alexander Shapiro, who held title to a property in Brooklyn, and Basanda. Capital Stack entered into an agreement whereby it would loan $650,000 to IBA Management LLC ("IBA"), a company controlled by Shapiro and Basanda. Shapiro and Basanda deeded the Subject Properties and the Brooklyn property to IBA to serve as collateral for the loan and then, on behalf of IBA, signed a mortgage establishing Capital Stack's interest in the Subject Properties. According to Capital Stack, it did not know that Basanda had received the Subject Properties from Irina, that Irina was under criminal investigation, or that anyone associated with IBA was anything other than a legitimate businessperson acting in good faith. Capital Stack relied on a settlement agent to record its mortgage interest in the Subject Properties, but the settlement agent failed to do so.

In February 2009, Irina pled guilty before this Court to conspiracy to commit bank fraud and the Court entered a Preliminary Order of Forfeiture in the criminal action in May 2010,

forfeiting Irina's interest in a number of assets, including the Subject Properties. Once it received notice of the forfeiture, Capital Stack's counsel notified the Government of its mortgage interest in the Subject Properties. Despite this notice, the Government filed Notices of Pendency relating to the Subject Properties in Nassau County. The Government also initiated the instant forfeiture proceeding against the defendants-in-rem, including the Subject Properties, and Capital Stack asserted a claim for the Subject Properties based on its then-unrecorded mortgage interest.[1]

In the course of the forfeiture proceeding, the Government and Capital Stack litigated a number of issues, including Capital Stack's standing to contest forfeiture of the Subject Properties, whether Capital Stack's interest took precedence over the Government's interest, and whether Capital Stack qualified as an innocent owner under the forfeiture laws. By Memorandum Decision and Order dated July 26, 2011, I ruled that Capital Stack had standing to assert its claim and that, if Capital Stack qualified as an innocent owner, its interest would take priority over the Government's forfeiture claim. I did not decide, however, whether Capital Stack in fact qualified as an innocent owner since discovery on that issue was still ongoing. The Government eventually moved to dismiss its claims voluntarily and without prejudice. Capital Stack also filed a motion, requesting the Court to find that it qualified as innocent owner. I did not rule on either motion, however, because the parties negotiated a resolution of their claims. The terms of that resolution were embodied in the Settlement Agreement, which I endorsed.

The Settlement Agreement only conditionally resolved the claims in this action. It required Capital Stack to withdraw its claim to the Subject Properties and the Court to order the Subject Properties forfeited to the Government in exchange for the Government's commitment to make recommendations concerning Capital Stack's petition for remission to the Asset Forfeiture

---

[1] Capital Stack subsequently recorded its mortgage interest in December 2010.

and Money Laundering Section ("AFMLS") of the Department of Justice.[2] If AFMLS granted the petition, the Government would then transfer the Subject Properties to Capital Stack.[3] If, however, these required predicate events did not occur within a given time period, either because AFMLS did not approve the petition or the Government did not transfer the Subject Properties to Capital Stack, the Settlement Agreement would be void, the parties would be allowed to renew their motions, and Capital Stack's consent to the forfeiture of the Subject Properties would be deemed withdrawn. Neither of the parties admitted any liability or wrongdoing. The Court retained jurisdiction to enforce the Settlement Agreement.

AFMLS granted Capital Stack's remission petition in April 2012. As of May, the Government had sent the executed transfer documents and executed deeds to Capital Stack and the transfer process was ongoing.

## DISCUSSION

### I. The Standard for Granting a Fee Award

Parties to a lawsuit are ordinarily responsible for their own attorney fees "absent explicit statutory authority" to the contrary. Buckhannon Board & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res., 532 U.S. 598, 602, 121 S. Ct. 1835, 1839 (2001). Under CAFRA, the United States is liable for attorney fees and costs when the claimant "substantially prevails" in a civil forfeiture proceeding. 28 U.S.C. § 2465(b)(1)(A). Through this provision, Congress sought to deter "the government's too-zealous pursuit of civil and criminal forfeiture." United States v. Khan, 497 F.3d 204, 208 (2d Cir. 2007). Capital Stack's entitlement to attorney fees and costs, therefore, depends on whether it "substantially prevail[ed]" in the instant forfeiture proceeding.

---

[2] The Settlement Agreement recognized that only the Chief of AFMLS has the authority to rule on Capital Stack's remission petition.

[3] This circuitous process assisted the parties in clearing title to the Subject Properties.

4

Courts interpreting federal fee-shifting statutes have held that, in order for a party to "prevail," it must "receive at least some relief on the merits of [its] claim," Hewitt v. Helms, 482 U.S. 755, 760, 107 S. Ct. 2672, 2675 (1987), which "materially alters the legal relationship between the parties by modifying [one party's] behavior in a way that directly benefits [the other party]." Farrar v. Hobby, 506 U.S. 103, 111-12, 113 S. Ct. 566, 573 (1992). A party may prevail by obtaining "an enforceable judgment . . . or comparable relief through a consent decree or settlement . . . [that] directly benefits the [party] at the time of the judgment or settlement." Id. (internal citations omitted). Further, any alteration of the legal relationship between the parties must be "judicially sanctioned." Buckhannon, 532 U.S. at 605, 121 S. Ct. at 1840. In other words, one party's "voluntary change in conduct, although perhaps accomplishing what [the other party] sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." Id.

The Second Circuit has recognized that "judicial action other than a judgment on the merits or a consent decree can support an award of attorney's fees, so long as such action carries with it sufficient judicial imprimatur." Roberson v. Giuliani, 346 F.3d 75, 81 (2d Cir. 2003).[4] "[A]ny interim judicial relief that alters the parties' legal relationship," as long as it arises from a court's assessment of the merits, possesses the requisite judicial imprimatur. See Vacchio v. Ashcroft, 404 F.3d 663, 673 (2d Cir. 2005). Although "[p]rivate settlements do not entail the judicial approval and oversight involved in consent decrees," Buckhannon, 532 U.S. at 604 n.7,

---

[4] By focusing on the judicial imprimatur of a given action, the Second Circuit has rejected the Eighth Circuit's narrow interpretation of Buckhannon which considers a plaintiff to be a prevailing party "only if it receives either an enforceable judgment on the merits or a consent decree," Christina A. v. Bloomberg, 315 F.3d 990, 993 (8th Cir. 2003), in favor of the broader approach favored by the First Circuit. Pres. Coal. of Erie Cnty. v. Fed. Transit Admin., 356 F.3d 444, 452 (2d Cir. 2004) ("We agree with the First Circuit that Buckhannon does not limit fee awards to enforceable judgments on the merits or to consent decrees."). In determining whether a party prevailed, the First Circuit focuses on the "materiality of a judicial outcome" and "whether the result is purely procedural or whether it actually accomplishes something substantive for the winning party." Maine Sch. Admin. Dist. No. 35 v. Mr. & Mrs. R., 321 F.3d 9, 17 (1st Cir. 2004).

5

121 S. Ct. at 1840 n.7, the Second Circuit has recognized two circumstances in which private settlements can be found to bear the necessary judicial imprimatur: first, where a district court has "retained jurisdiction" over the settlement agreement, Roberson, 346 F.3d at 82, and second, where, the order of dismissal "explicitly incorporates the terms of a settlement" and the district court intended to place its judicial imprimatur on the settlement. Perez v. Westchester Cnty. Dep't of Corr., 587 F.3d 143, 152 (2d Cir. 2009).

## II. Application

Capital Stack argues that it substantially prevailed in this proceeding in two ways. First, Capital Stack prevailed when the Government moved to dismiss its own forfeiture claim voluntarily following my rulings regarding Capital Stack's standing and the possible superiority of its interest. Second, Capital Stack prevailed because, through the process provided by the Settlement Agreement, it obtained a transfer of the Subject Properties from the Government. On the other hand, the Government argues that this outcome is insufficient to conclude that Capital Stack prevailed in this proceeding. The transfer of the Subject Properties was, according to the Government, a result of its voluntary decision to enter the Settlement Agreement and AFMLS' discretionary grant of remission, not a judicially-sanctioned change in the relationship between the parties.

### A. The Court's Rulings and the Government's Motion to Dismiss

Capital Stack makes much of the fact that the Court ruled that it has standing to bring its claim and that its interest would be superior to the Government's claim if it was an innocent owner. These rulings alone do not suffice to support a finding that Capital Stack prevailed. See Hewitt, 482 U.S. at 760, 107 S. Ct. at 2675-76 (concluding that "an interlocutory ruling that [plaintiff's] complaint should not have been dismissed for failure to state a constitutional claim

6

. . . is not the stuff of which legal victories are made."). The Second Circuit's ruling in United States v. Davis, 648 F.3d 84 (2d Cir. 2011), a case involving the forfeiture of artwork, is instructive. In Davis, the claimant's "partial victory at summary judgment merely narrowed the issues presented[;]" it did not entitle her to ownership of the artwork and the claimant was ultimately forced to relinquish possession after losing at trial. Id. at 98. The Second Circuit held that the claimant did not "substantially prevail" within the meaning of CAFRA because:

> [claimant's] purpose was to obtain title to [the artwork], not simply to elucidate the legal theories under which that title could and could not be defeated, and because the litigation resulted in that title vesting in the United States, [claimant] cannot be said to have obtained any of the relief that she sought.

Id. Although my rulings here favored Capital Stack, they did not determine whether Capital Stack was ultimately entitled to a "change in [its] legal relationship" with the Government or to any relief. See Roberson, 346 F.3d at 83. That decision could not have been made until after Capital Stack's qualification as an innocent owner was determined.

Although Capital Stack repeatedly asserts that the Government adduced no evidence that it was anything other than an innocent owner, that argument is speculative. The Government never conceded this point and maintains to this day that it would have offered evidence to show that Capital Stack was willfully blind to Irina Khaimov's crimes and, consequently, not entitled to innocent owner status. See Buckhannon, 532 U.S. at 620, 121 S. Ct. at 1848 (Scalia, J., concurring) ("One does not prevail in a suit that is never determined."); see also Union of Needletrades, Indus., & Textile Emps., AFL-CIO v. INS, 336 F.3d 200, 206 (2d Cir. 2003) (finding plaintiff ineligible for attorney fees under Buckhannon where the "district court *never* granted any relief on the merits").

The fact that the Government filed a motion to dismiss the forfeiture proceeding voluntarily and without prejudice does not change this outcome. Numerous courts have ruled in

7

the CAFRA context that even where, unlike here, a court actually dismisses the proceeding without prejudice pursuant to the Government's motion, the dismissal does not render the claimant a "substantially prevailing" party entitled to attorney fees. See United States v. 2007 BMW 335i Convertible, 648 F. Supp. 2d 944, 951-52 (N.D. Ohio 2009) ("[T]he Court's order dismissing the Government's civil forfeiture action *without* prejudice does not constitute a judicially sanctioned change in the parties' relationship."); United States v. $13,275.21, More or Less, in United States Currency, No. SA-06-CA-171-XR, 2007 WL 316455, at *4 (W.D. Tex. Jan. 31, 2007) (finding that "the Court's dismissal without prejudice is not an enforceable judgment *on the merits*"). A dismissal without prejudice merely "return[s] the parties to the *status quo ante* and [does] not materially alter their legal relationship" as the Government may subsequently choose to refile the forfeiture action. $13,275.21, 2007 WL 316455, at *4. The situation is even more clear here because the Court never granted the Government's motion to dismiss the action. Instead, the Government chose to withdraw its motion and enter into the Settlement Agreement. The law is plain that a party's "voluntary change in conduct . . . lacks the necessary judicial *imprimatur* on the change" to support a fee award. Buckhannon, 532 U.S. at 605, 121 S. Ct. 1840.

B. The Settlement Agreement

Capital Stack points to the Settlement Agreement to argue that it "substantially prevailed" because the "ultimate outcome" of the process set forth in the Settlement Agreement was a vindication of Capital Stack's right to the Subject Properties. Additionally, it argues that the Settlement Agreement bears many of the hallmarks of judicial imprimatur.

Although the Second Circuit has considered a district court's retention of jurisdiction over a private settlement to be necessary for a finding that the settlement possesses the requisite

judicial imprimatur, see Torres v. Walker, 356 F.3d 238 (2d Cir. 2004), it has never held that the district court's retention of jurisdiction or the mere incorporation of settlement terms into a court's order are themselves sufficient to supply that imprimatur. Indeed, there are important distinctions between the Settlement Agreement here and the settlements that were at issue in Roberson and Perez, notwithstanding their superficial similarities. In Perez, the Second Circuit commented on the district judge's "extensive involvement and close management of the case," noting that he conducted settlement conferences, "reviewed and revised the settlement agreement with the parties," and "played an integral role in the resolution of the suit." 587 F.3d at 147-48, 152. This Court was not nearly as involved in the parties' negotiation of a resolution to this action. Unlike the district judge in Perez, I did not involve this Court in the parties' settlement discussions or make any changes to the terms of their settlement. In fact, when the parties jointly requested a settlement conference, I refused their request.

More importantly, though, unlike the settlement agreement in Roberson, the Court did not provide Capital Stack with any relief on the merits of its claim through endorsing the Settlement Agreement here. The plaintiffs in Roberson challenged various policies regarding the disposition of applications for food stamps. The parties reached a settlement whereby, in exchange for the plaintiffs' dismissal of their claims, the defendants were obligated to make numerous changes to the challenged policies. Because the settlement agreement "condition[ed] its effectiveness on the district court's retention of jurisdiction," the court's endorsement of the agreement "*effectuated* the obligations of the parties." 346 F.3d at 83. The Roberson court implicitly "gave judicial sanction" to defendants' obligations to change their policies "because the court has the general responsibility to ensure that its orders are fair and lawful." Id. at 82-

9

83.[5] This Court has provided no such sanction to Capital Stack's right to the Subject Properties. The conditional nature of the Settlement Agreement makes this clear.

The terms of the Settlement Agreement do not entitle Capital Stack to any *judicial* relief from the Government's forfeiture proceeding. The endorsed Settlement Agreement does not actually provide Capital Stack with possession of and title to the Subject Properties. The only satisfaction that Capital Stack received with regard to the Subject Properties was as a result of the voluntary remission granted by AFMLS. The determination of whether to grant a remission is entirely within the AFMLS Chief's discretion. See 28 C.F.R. §§ 9.1(b)(2), 9.4(g). Indeed, courts have commented that the "remission of a forfeiture is neither a right nor a privilege, but an act of grace," Concepcion v. United States, 938 F. Supp. 134, 137 (E.D.N.Y. 1996) (quoting In re $67,470.00, 901 F.2d 1540, 1543 (11th Cir. 1990)), and the Second Circuit has recognized, in the criminal forfeiture context, that a grant of remission is a "non-judicial remedy." DSI Assocs. v. United States, 496 F.3d 175, 186 (2d Cir. 2007). The fact that the process instituted by the Settlement Agreement ultimately resulted in Capital Stack receiving possession of and title to the Subject Properties is of no moment because Capital Stack has not benefitted from any "judicially sanctioned change in the legal relationship of the parties." Buckhannon, 532 U.S. at 605, 121 S. Ct. at 1840. See also Pres. Coal. of Erie Cnty., 356 F.3d at 451 (noting that courts focus on the "materiality of a *judicial* outcome") (emphasis added). Concluding that AFMLS' grant of Capital Stack's remission petition is anything other than a "voluntary change in conduct" insufficient to support a fee award would require this Court to embrace the "catalyst theory" of prevailing parties that the Supreme Court unequivocally rejected in Buckhannon. 532 U.S. at

---

[5] The situation in Perez was even more clear. The parties' negotiated settlement afforded plaintiffs much of the merits-based relief they sought and the district judge "pressed Defendant's counsel on the need to make the agreement part of an enforceable stipulation." 587 F.3d at 148, 152-53.

604-05, 121 S. Ct. at 1840.[6]

The Second Circuit, following Buckhannon, has endorsed the First Circuit's approach which examines whether the judicial result "actually accomplishes something substantive for the winning party." Pres. Coal. of Erie Cnty., 356 F.3d at 451-52 (quoting Maine Sch. Admin. Dist., 321 F.3d at 17)). Here, Capital Stack can hardly be considered "the winning party;" the Settlement Agreement granted forfeiture *to* the Government. Nor did the Settlement Agreement "accomplish[] something substantive" for Capital Stack; it merely set forth contingent provisions that would become operative if other entities, AFMLS and the Government, "accomplish[ed] something substantive" for Capital Stack (or failed to do so).

The Eighth Circuit's decision in Sierra Club v. City of Little Rock, 351 F.3d 840 (8th Cir. 2003), is instructive. There, the district court entered a declaratory judgment in favor of the plaintiff, ruling that the defendant was in violation of a permit requirement, but refused to enter an injunction or any remedy based on this judgment. On appeal, the Eighth Circuit reversed the district court's award of attorney fees to the plaintiff. Although the defendant ultimately acted in a way that partially satisfied the plaintiff, the Eighth Circuit concluded this conduct was not "judicially sanctioned relief" because the district court refused to require the defendant to take this action.

Similarly, while the Court ruled that Capital Stack had standing, determined that its claim to the Subject Properties could be superior to the Government's claim, and endorsed the Settlement Agreement, the Court never provided Capital Stack with "judicially sanctioned relief." Nothing in the Court's rulings or its endorsement of the Settlement Agreement required AFMLS to grant Capital Stack's remission petition or the Government to transfer the Subject

---

[6] Under the "catalyst theory" a plaintiff is a prevailing party "if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." Buckhannon, 532 U.S. at 601, 121 S. Ct. at 1838.

11

Properties to Capital Stack. If AFMLS did not grant remission or the Government did not transfer the Subject Properties, the Court could not sanction AFMLS or the Government. Nor could the Court give Capital Stack possession of and title to the Subject Properties. The Court could only allow Capital Stack to withdraw its consent to the forfeiture and reinstate its motion regarding its innocent owner status. In other words, the Court could only return the parties to the status quo prior to the Settlement Agreement. Without determining that Capital Stack was an innocent owner, the Court could not "accomplish something substantive" for Capital Stack regarding its entitlement to the Subject Properties.

The Settlement Agreement and the processes it sets forth do not constitute a "court-ordered change in the legal relationship between" the parties, Buckhannon, 532 U.S. at 604, 121 S. Ct. at 1840, and, therefore, they do not fall within "the type of judicial action that could convey prevailing party status." Roberson, 346 F.3d at 81.

C.   Capital Stack's Proposed Permissive Standard

Capital Stack has challenged whether Buckhannon and its progeny are even applicable to a determination of whether a party has "substantially prevailed" under CAFRA. It argues that CAFRA's requirement that a party "substantially prevail" is a more permissive standard than the "prevailing party" standard at issue in the Buckhannon line of cases. Presumably, according to this position, it would be possible for a party to fail to qualify as a "prevailing party" but, nonetheless, be found to have "substantially prevailed."

The Second Circuit and several of its sister circuit courts have concluded that "the terms 'prevailing party' and 'substantially prevails' are fundamentally the same for purposes of determining whether a plaintiff can recover under a fee-shifting statute." Pres. Coal. of Erie

12

Cnty., 356 F.3d at 450 n.3.[7] The District of Columbia Circuit has also commented, while interpreting the Freedom of Information Act, that the "addition of the modifier 'substantially' might possibly be taken as limiting the category of 'prevailing parties,' but it cannot be taken as expanding the universe of parties eligible for a fee award." Oil, Chem. & Atomic Workers Int'l Union, 288 F.3d at 455.

Capital Stack distinguishes this authority, however, because the cases involve fee-shifting statutes other than CAFRA. It points to one case where a district court remarked that CAFRA "broadens the class that can receive fees in forfeiture actions to claimants who 'substantially prevail.'" United States v. $60,201.00 in U.S. Currency, 291 F. Supp. 2d 1126, 1130 (C.D. Cal. 2003).[8] According to Capital Stack, it is inappropriate to compare CAFRA to statutes that provide fees for prevailing plaintiffs because CAFRA's purpose is to deter the Government's overzealous use of the forfeiture laws.

The Second Circuit has rejected Capital Stack's argument, albeit in dictum. Khan, 497 F.3d at 209 n.7 ("[W]e think that the Supreme Court's decision in Buckhannon . . . should inform our understanding of the term 'substantially prevails' in CAFRA."). See also Davis, 648 F.3d at 97 (same); 2007 BMW 335i Convertible, 648 F. Supp. 2d at 948-52 (citing cases).

Although I agree with the reasoning of these cases and reject Capital Stack's argument, it is not necessary for the purposes of this motion to decide whether CAFRA's "substantially prevails" standard is more permissive than a "prevailing party" standard. Even if CAFRA sets a

---

[7] See also Sierra Club, 351 F.3d at 845 (applying Buckhannon to the Clean Water Act which authorizes an award of fee to any "prevailing or substantially prevailing party"); Kasza v. Whitman, 325 F.3d 1178, 1180 (9th Cir. 2003) (holding plaintiff "is not a 'prevailing party' (and thus cannot be a 'substantially prevailing party') [under the Resource Conservation and Recovery Act] because she did not gain by judgment or consent decree a material alteration of the legal relationship of the parties"); Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. Dep't of Energy, 288 F.3d 452, 455 (D.C. Cir. 2002) ("We have seen nothing to suggest that Congress sought to draw any fine distinction between 'prevailing party' and 'substantially prevail.'").

[8] When this language is read in context, however, "it is clear that $60,201.00 merely stands for the proposition that the [Equal Access to Justice Act's] fee caps do not apply to attorney's fee awards under CAFRA." 2007 BMW 335i Convertible, 648 F. Supp. 2d at 950 n.5.

lower threshold for establishing an entitlement to an attorney fees award, Capital Stack fails to meet that threshold. As discussed above, Capital Stack cannot point to any judicial ruling with regard to its ultimate right to the Subject Properties where it prevailed *at all*, let alone "substantially." In fact, the only order the Court issued which affected the legal relationship between the parties forfeited to Subject Properties to the Government – hardly a judicially-sanctioned victory for Capital Stack.

The policy considerations that Capital Stack highlights do not require a different result. Capital Stack is undoubtedly correct that, through CAFRA, Congress sought to "deter government overreaching" by providing that "substantially prevailing" parties are entitled to fees. Khan, 497 F.3d at 208. But, by the same token, "Congress had no wish to expand government liability respecting legitimate seizures of property plausibly subject to forfeiture." Id. This is not a case of Government overreaching. At the time the Government brought this case, Capital Stack's mortgage interest was still unrecorded. Although the Government was ultimately wrong about the superiority of its Notices of Pendency relative to Capital Stack's unrecorded mortgage, there is no indication that the Government asserted its position in bad faith. As this Court recognized in the Memorandum Decision and Order ruling on the Government's motion to dismiss, the superiority question "is not straightforward and there is surprisingly little authority on it." Further, if Capital Stack had promptly recorded its mortgage, it could have saved itself most, if not all, of the expense it incurred litigating this issue. Lastly, the Government has suggested that Capital Stack may have been willfully blind to Irinia Khaimov's crimes, making the forfeiture of its interest in the Subject Properties entirely appropriate. While CAFRA's attorney fees provision is meant to help innocent property owners protect their rights, I am not inclined to extend this provision to situations where the owner's

innocence has not been established.

## **CONCLUSION**

Capital Stack's motion for attorney fees [112] is denied.

**SO ORDERED:**

s/ BMC
_____
U.S.D.J.

Dated: Brooklyn, New York
September 4, 2012